# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

BELETA LOCKWOOD,

    Plaintiff,

    v.

COASTAL HEALTH DISTRICT 9-1,
GLYNN COUNTY BOARD OF HEALTH,
and BETTY T. DIXON,

    Defendants.

2:16—cv—123

## ORDER

This matter comes before the Court on the Motions for Summary Judgment of Defendant Glynn County Board of Health (the "Board of Health") and Defendants Coastal Health District 9-1 ("Coastal Health") and Betty T. Dixon. Dkt. Nos. 23, 25. These Motions have been fully briefed and are ripe for review. For the following reasons, Dixon and the Board of Health's Motions are **GRANTED**, and Coastal Health's Motion is **GRANTED** in part and **DENIED** in part.

## BACKGROUND

Plaintiff Beleta Lockwood brought claims for age and race discrimination against Defendants, complaining of termination, unequal terms and conditions in her employment, and retaliation.

Dkt. No. 1. She alleged that her harassment included "criticism and excessive scrutiny of [her] job performance, false accusations about [her] demeanor, inquiries about work related decisions and expenses, time and attendance related matters." Id. p. 5.

Lockwood is an African American woman who was employed as an early intervention coordinator for the Babies Can't Wait Program at the Coastal Health District. Dkt. No. 23-4 pp. 15-16, 21, 64. As part of Lockwood's job duties, she was required to hire independent contractors to serve children in the Babies Can't Wait program. Dkt. No. 23-4 pp. 22-23. She was terminated on August 11, 2015. Id. Defendant Betty Dixon is a 59-year-old Caucasian female who served as the director of clinical services for Coastal Health. Dixon supervised Lockwood from October 1, 2013 until her termination. Dkt. No. 23-4 p. 20. Dr. Diane Weems is a 61-year-old Caucasian female who served as the district health director for Coastal Health from February 1, 2013 until September 1, 2016. Dkt. No. 23-11 ¶ 2. Dr. Weems stated in her affidavit that she was the final decision maker regarding Coastal Health's budget allocations as well as hiring and firing. Id.

Nicole Smith is a 45-year-old Caucasian woman who has served as the human resources manager for Coastal Health since August 2014. Dkt. No. 23-13 ¶ 2. Saroyi Morris is the District

AO 72A
(Rev. 8/82)

Program Manager at Coastal Health and is an African American woman. Dkt. No. 23-12 ¶ 2. Her position reports directly to Weems. Id. She directly supervised Plaintiff from September 2010 until October 2013. Id. ¶ 3. She testified that she found supervising Lockwood to be a challenge, explaining that she perceived Lockwood to have problems with attendance, with following policies, with being hands on with her budget, and with regularly reporting developments. Id. ¶ 3. In 2013, Weems and Morris decided Lockwood needed more direct oversight and moved her under the supervision of Defendant Dixon. Id.

Dixon testified that she found supervising Lockwood to be difficult, explaining that she felt Lockwood bristled at being held accountable for her time out of the office, that she was argumentative, and that she blamed Dixon for excessively monitoring her when asked about her schedule. Dkt. No. 23-10 ¶ 5. Dixon also testified regarding gaps in Lockwood's job knowledge including the process for encrypting emails and understanding the "deliverables of the BCW program."[1] Id. ¶¶ 6-7.

Dr. Weems hand-delivered a termination letter to Lockwood on August 11, 2015. Dkt. No. 23-4 p. 64. The parties give conflicting accounts of the events leading up to the termination. Weems told Lockwood she was being terminated

---

[1] The affidavit does not elaborate on what is meant by the "deliverables."

because she was not a good fit.  Id.  Weems testified that she decided to terminate Lockwood after conferring with Morris, the district program manager, because they spent too much time managing her, she was unwilling to digest anything she did not want to hear, and her disruptive nature detracted from her progress in the program deliverables.  Dkt. No. 23-11 ¶ 6. Expounding on the time spent managing Lockwood, Morris testified that "the cumulative amount of time and redundancy of effort required to support Beleta was beginning to impact my ability to be an effective leader to my direct report staff and programs." Dkt. No. 23-12 ¶ 7.

As an example of Lockwood's unwillingness to digest anything she did not want to hear, Weems cited an episode relating to a staffing shortage.  Lockwood requested that Coastal Health hire a full-time clerk.  Dkt. No. 23-4 p. 48, 51. Lockwood met with Weems, Morris, and Dixon to discuss this request in June 2015.  Dkt. No. 23-12 ¶ 6; Dkt. No. 23-11 ¶ 5; Dkt. No. 23-10 ¶ 8.  The group decided that hiring a service coordinator was a higher priority.  Id.  When Dixon reiterated to Lockwood on August 7, 2015, that they could not post a full-time clerk position, Lockwood replied, "[I]t leaves me no other options other than to speak with the state office."  Dkt. No. 23-10 Ex. D.  Feeling that Lockwood's tone was insubordinate, Dixon forwarded the email to her supervisors, Morris and Weems.

Dkt. No. 23-10 ¶ 8. Weems and Morris then decided to terminate Lockwood. Dkt. No. 23-11 ¶ 6.

Coastal Health hired Kimberly McAliley to replace Lockwood. Dkt. No. 23-4 p. 67. McAliley is a Caucasian in her 40s. Id.

## LEGAL STANDARD

Summary judgment is required where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. In making this determination, the court is to view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant must show the court that there is an absence of evidence to support the nonmoving party's case. Id. at 325. If the moving party

discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. <u>Anderson</u>, 477 U.S. at 257.

The nonmovant may satisfy this burden in one of two ways. First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting <u>Celotex Corp.</u>, 477 U.S. at 332 (Brennan, J., dissenting)). Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." <u>Id.</u> at 1117. Where the nonmovant attempts to carry this burden instead with nothing more "than a repetition of his conclusional allegations, summary judgment for the defendants [is] not only proper but required." <u>Morris v. Ross</u>, 663 F.2d 1032, 1033-34 (11th Cir. 1981) (citing Fed. R. Civ. P. 56(e)).

## DISCUSSION

### I. Board of Health's Motion for Summary Judgment

The undisputed evidence shows that the Board of Health is neither Lockwood's employer nor an employer subject to Title VII or the ADEA.

Lockwood admitted in her deposition that the Board of Health was not her employer and should not be a party to this litigation. Dkt. No. 23-4 108:16-24; 109:1-12; 113:10-15; 133:2-9. She has introduced no evidence that the Board of Health employed her. In fact, the Board of Health has introduced evidence that it did not employ her. Dkt. No. 25-4.

Moreover, the undisputed evidence shows that the Board of Health is not subject to Title VII or the ADEA. An employer subject to Title VII is "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year." 42 U.S.C. § 2000e(b). Similarly, an employer subject to the ADEA is "a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year." 29 U.S.C. § 630(b). Lockwood has introduced no evidence that the Board of Health has the requisite number of employees. And once again, the Board of Health has introduced evidence to the contrary. Dkt. No. 25-4.

AO 72A
(Rev. 8/82)

Therefore, the Board of Health is neither an employer under the relevant statutes nor Lockwood's employer, and its Motion for Summary Judgment is **GRANTED**.

## II. Dixon's Motion for Summary Judgment

The same goes for Dixon. Neither Title VII nor the ADEA provide a cause of action against individuals employed by the plaintiff's actual employer. Lockwood's claim for employment discrimination cannot be stated against an individual supervisor who is merely acting on behalf of the corporate employer. Dixon herself has not employed Lockwood, nor does the evidence show that she has employed anyone. Thus, she cannot be an employer who has employed at least 15 (for Title VII) or 20 (for the ADEA) employees.

## III. Coastal Health's Motion for Summary Judgment

Lockwood has identified claims for unequal terms and conditions of employment, termination, and retaliation against Coastal Health. Dkt. No. 1, III.A. Coastal Health has moved for summary judgment with regard to each, and the Court will take up each in turn.

### A. Title VII § 703 claim

Title VII prohibits an employer from discriminating against a person based on the person's race. 42 U.S.C. § 2000e-2(a)(1). A plaintiff may prove such a claim by either direct evidence or circumstantial evidence. Alvarez v. Royal Atl. Developers,

_Inc._, 610 F.3d 1253, 1264 (11th Cir. 2010). "Direct evidence of discrimination is 'evidence that, if believed, proves the existence of a fact without inference or presumption.' Under Eleventh Circuit law, 'only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination.'" _Dixon v. The Hallmark Cos., Inc._, 627 F.3d 849, 854 (11th Cir. 2010) (quoting _Wilson v. B/E Aerospace, Inc._, 376 F.3d 1079, 1086 (11th Cir. 2004) (internal citations omitted)). Because Lockwood has not provided any direct evidence of racial discrimination, she must prove her case through circumstantial evidence.

Accordingly, a plaintiff "must first establish a prima facie case of discrimination, typically by showing that she was a qualified member of a protected class and was subjected to an adverse employment action in contrast to similarly situated employees outside the protected class." _Alvarez_, 610 F.3d at 1264 (quoting _Wilson_, 376 F.3d at 1087). "Once the plaintiff has made a prima facie case, a rebuttable presumption arises that the employer has acted illegally. The employer can rebut that presumption by articulating one or more legitimate non-discriminatory reasons for its action. If it does so, the burden shifts back to the plaintiff to produce evidence that the employer's proffered reasons are a pretext for discrimination."

AO 72A
(Rev. 8/82)

Id. "Despite these shifts in the burden of production, the ultimate burden of persuasion remains on the plaintiff to show that the defendant intentionally discriminated against her." Id. (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)).

### 1. Prima facie case

To establish a prima facie case of disparate treatment under Title VII, a plaintiff must show: (1) she is a member of a protected class; (2) she is qualified for the position in question; (3) she suffered an adverse employment action; and (4) she was replaced by a person outside her protected class or was treated less favorably than a similarly situated individual outside her protected class. Maynard v. Bd. of Regents, 342 F.3d 1281, 1289 (11th Cir. 2003).

Only the third element is contested. Defendant does not contest that Lockwood is a member of a protected class because she is African American, that she was qualified for the position, and that she was replaced by a white individual. Regarding the third element, Defendant concedes that Lockwood was terminated, but she has identified many other harms as adverse actions that Defendant argues do not satisfy the requirements of Title VII. So Defendant concedes that Lockwood has made out a prima facie case regarding her termination but no other action. Dkt. No. 23-1 p. 7.

Under § 703(a)(1) of Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). The Supreme Court held in Hishon v. King & Spalding that a noncontractual benefit of employment may qualify as a "privilege" if the benefit is "part and parcel of the employment." 467 U.S. 69, 77 (1984). The Eleventh Circuit requires that an adverse action is a "serious and material change in the terms, conditions, or privileges of employment" as viewed by a reasonable person in the circumstances. Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1239 (11th Cir. 2001). There, a negative performance evaluation and a temporary demotion did not constitute adverse actions, despite the plaintiff's contention that they could hinder his future job prospects. Id. The court has further held that neither written reprimands nor the assignment of temporary additional work constitute adverse employment actions. Wallace v. Ga. Dep't of Transp., 212 F. App'x 799 (11th Cir. 2006); Grimsley v. Marshalls of Ma., Inc., 248 F. App'x 604 (11th Cir. 2008).

In Alford v. Florida, a sister court held that the plaintiff had created a genuine issue of material fact as to

AO 72A
(Rev. 8/82)

whether she demonstrated a sufficient adverse employment action when she "had to incur some additional unexpected wear and tear on her personal vehicle" and "could not be given any additional reimbursement [above 29 cents per mile] for expenditures related to the operation, maintenance, and ownership of her vehicle." 390 F. Supp. 2d 1236 (S.D. Fla. 2005). So the court held that the plaintiff had demonstrated that she suffered an adverse employment action with the requirement that she make numerous pickups and deliveries in her personal vehicle, as well as her reprimands, suspensions, and ultimate termination. Id. at 1249.

Lockwood has asserted that the following harms qualify as adverse actions: (1) not making her a part of the team; (2) not giving her opportunities to be in charge; (3) requiring her to give additional information for a travel request; (4) leaving her out of conversations; (5) making her do demeaning tasks such as moving boxes from the top of file cabinets and taking down blinds; (6) denying her reasonable requests for sufficient staff; (7) generally talking down to her; (8) denying her the requisite level of autonomy by asking where she was when she was not in the office; (9) denying her a reimbursement; and (10) terminating her. Dkt. No. 29 pp. 2, 3, 6; Dkt. No. 23-4 pp. 67, 77-78.

Of these, only the last two are actionable under Title VII. Termination and reimbursement denials both constitute an

AO 72A
(Rev. 8/82)

economic harm. All of the other harms fail to state an adverse action under Title VII as a matter of law. But Lockwood has made out a prima facie case of employment discrimination regarding her termination and the denial of her reimbursement request.[2]

## 2. Legitimate, nondiscriminatory reason

The Supreme Court has made clear that "merely 'articulating some legitimate, nondiscriminatory reason' . . . will suffice to meet the employee's prima facie case of discrimination." Bd. of Trustees of Keene v. State Coll. v. Sweeney, 439 U.S. 24, 25 (1978) (citing Furnco Constr. Co. v. Waters, 438 U.S. 567 (1978)). This burden is "exceedingly light." Holified v. Reno, 115 F.3d 1555, 1564 (11th Cir. 1997) (per curiam). It should simply be a reason "that might motivate a reasonable employer." Chapman v. Al Transp., 229 F.3d 1012, 1030 (11th Cir. 2000).

Defendant has articulated no legitimate nondiscriminatory reason for denying reimbursements to Plaintiff. With respect to that action, its motion for summary judgment is **DENIED**.

In response to Lockwood's prima facie case of termination on the basis of race, Defendant has offered a series of what it deems legitimate non-discriminatory reasons.

Defendant asserts that it fired Plaintiff not because of her race but because: (a) of ongoing challenges supervising

---

[2] Defendant concedes the prima facie case regarding the termination claim. Dkt. No. 23-1 p. 9.

Plaintiff and dealing with her attitude, consuming too much management time and detracting from the manager's ability to effectively lead their programs; (b) of problems with attendance and following employment policies; (c) she lacked competencies regarding key areas of her job; (d) she demonstrated insubordination by persisting in a request for additional staff after being denied; and (e) she was not a good fit. Dkt. No. 23-1 pp. 9-14.

### 3. Pretext

When the defendant presents a legitimate nondiscriminatory reason for the challenged employment action, the burden then returns to the plaintiff to produce evidence showing that the employer's proffered reasons were not the real reasons for the adverse action. The plaintiff may do so "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Burdine, 450 U.S. at 256. To show pretext, a plaintiff "must meet [the employer's] reason head on and rebut it, and the employee cannot succeed by simply quarelling with the wisdom of that reason." Chapman, 229 F.3d at 1030. "The inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of his performance." Holifield, 115 F.3d at 1565. This evaluation is limited to whether the

employer's reasons lack credibility, not whether they are prudent or fair. Chapman v. Al Transp., 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc).

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000). Because the employer need only articulate one legitimate nondiscriminatory reason for the adverse action, Plaintiff's failure to demonstrate that any given reason is a pretext will result in the grant of summary judgment to Defendant. The Court must examine the reasons one by one.

### a. Ongoing challenges supervising Plaintiff

Defendant has explained that it fired Plaintiff because of ongoing challenges supervising her and dealing with her "attitude." Managing her, it explained, took up too much management time, detracting from the managers' ability to effectively lead their programs. Dkt. No. 23-1 p. 10. Morris testified that "[a]s the manager of multiple programs and staff, the cumulative amount of time and redundancy of effort required to support Beleta was beginning to impact my ability to be an effective leader to my direct report staff and programs." Dkt. No. 23-12 ¶ 7.

AO 72A
(Rev. 8/82)

Lockwood attempts to call this stated reason into question by pointing out that she had never been reprimanded nor received discipline of any kind. Additionally, Morris was no longer Lockwood's direct supervisor as of October 2013. Dkt. No. 23-12 ¶ 3.

### b. Problems with following employment policies

Defendant has also explained that it fired Plaintiff because she had problems following district policies. As examples, Defendant explained that Plaintiff had problems with attendance. Dkt. No. 23-12 ¶ 3. She did not properly follow the process of criminal background checks for contractors. Dkt. No. 23-13 ¶ 4. Plaintiff also sought ID badges for independent contractors after being told that Coastal Health only provides such badges for its employees. Dkt. No. 23-13 ¶ 6 and Ex. C; Dkt. No. 27-10 ¶ 5 and Ex. A. She was not on top of her budget, failed to keep her supervisors informed, and delayed three months before responding to staff inquiries about setting up her new employee with access to the network systems. Dkt. No. 23-12 ¶ 3; Dkt. No. 23-4 p. 42-44 and Ex. 6; Dkt. No. 23-13 ¶ 5 and Ex. B.

Responding to Defendant's reference to Plaintiff's attendance problems, Plaintiff asserts that she had no attendance problems. Dkt. No. 29 p. 10. She points out that Defendant has not proven that she had any attendance problems,

AO 72A
(Rev. 8/82)

and that no supervisor discussed such an issue with her. *Id.* To the extent that Defendant was referring to Plaintiff's travel, Plaintiff responds that most of the travel she conducted was required by the district. Dkt. No. 23-4 pp. 79-80; Dkt. No. 29 p. 9. She further explains that she asked Dixon why she looked for her when she (Lockwood) was out of the office "when you know where I am because you have my calendar." Dkt. No. 23-4, 31:3-4.

Regarding the criminal background checks, Plaintiff answers that the Brunswick office, not her office, was tasked with handling background checks. Dkt. No. 23-4 pp. 22-23.

Regarding the ID badges, Plaintiff answers that most districts in the state have some form of ID badges for their contracted providers and that when she made the request that her independent contractors should be included in the number of those who receive such badges, the district had no formal policy that independent contractors could not receive them. Dkt. No. 23-4 pp. 47-49. Specifically, she testified that she had never been informed that the Coastal Health District had a policy requiring the contractors to provide their own ID badges and that her request for the badges was only in response to the State office's indication of its concerns about some early childcare centers where the providers must go service the children without badges. Dkt. No. 23-4, 47:11:-25. She further

testified that other districts provide badges for their contractors and that the budget could have accommodated such a line item. Id. 48:10-18.

Regarding keeping supervisors informed and being on top of her budget, Lockwood shows that she was only required to inform her supervisors when there were developments to report, and there were none to report at the times that Defendants claim she was not reporting. Further, Morris had never addressed this issue of accountability with her before her termination.

### c. Lacked competencies regarding key job functions

Defendant has also explained that Plaintiff lacked competencies with respect to key areas of her job including complying with email encryption policies and staying informed about the most recent deliverables. Dkt. No. 23-10 ¶¶ 6-7.

In response, Lockwood explains that any inability to properly encrypt her emails stemmed not from herself but from certain external factors: her computer was not set up for encryption, she was never given the routine handout showing how encryption works, and she was never shown how to properly encrypt emails. Specifically, she testified that she had not been shown the instructions about how to encrypt emails. Dkt. No. 23-4 40:18-23. The policy of encrypting emails was put into place after the commencement of Lockwood's job with the district, and her particular office system was not initially set

up to encrypt. Id. 41:8-14. She further explained that the district's policy did not include encrypting emails sent internally, and that she never received feedback from Dixon or anybody at the district regarding improper encrypting of emails going out of the server. Id. 41:20-42:19.

Regarding the deliverables, Lockwood explains that they "came from the feds to the State office and then from the State office to the districts" and that they would then disburse them as soon as they were received from the State office. Dkt. No. 23-4 37:10-19. The indicators were thus devised by the federal government and followed by each district. Id. 38:19-24.

### d. Insubordination

Defendant has also explained that Plaintiff was "insubordinate" in seeking additional staff after her request for such staff was denied. Plaintiff and a team of management collectively decided in June 2015 to prioritize hiring a service coordinator over making the temporary clerk position full time and hiring another clerk. Dkt. No. 23-12 ¶ 6; Dkt. No. 23-10 ¶ 8. Yet Plaintiff continued to pursue the discussion. Dkt. No. 23-12 ¶ 6; Dkt. No. 23-11 ¶ 4. Defendant also asserted that after Plaintiff was reminded of this, she "threat[ened]" her supervisors by saying "it leaves me no other options other than to speak with the state office." Dkt. No. 23-4 p. 52. Weems testified that when he and Morris thereafter decided to

AO 72A
(Rev. 8/82)

terminate Plaintiff's employment, "[i]t was revealing to me that, despite hearing from the final decision-maker, she would not and/or could still not accept the answer and move forward in the best interest of the program and those it served." Dkt. No. 23-11 ¶ 5.

In response, Lockwood explains that she was justified in seeking additional staff because District Administrator Brent Jordan had told her there was a budget for additional staff. Dkt. No. 23-4 64:12-21. She explains that everyone else got the staff they requested, that her request never left the desk of her direct supervisors. Dkt. No. 23-4 60:14-19. She paints a different story of her pursuit of additional staff than the one told by Defendant. When Lockwood told Weems that Dixon had denied her repeated request for a new clerk, Weems asked Lockwood whether they had agreed upon a new staff person for the Babies Can't Wait Program. Dkt. No. 29 p. 7. Lockwood responded with a yes, but explained that she also needed to replace someone who left after that meeting had occurred. Id. Weems said she needed to check her meeting minutes and get back with Lockwood. Id. She came back with a termination letter. Dkt. No. 23-4 65:2-6.

### e. Not a good fit

Ultimately, Weems met with Plaintiff on August 11, 2015, to hand-deliver her termination letter, informing her that she was not a good fit. Dkt. No. 23-4 p. 64.

Plaintiff calls this stated reason into question by pointing out that she worked at Coastal Health for five years.

The Court is satisfied that Lockwood has responded to each legitimate nondiscriminatory reason offered by Coastal Health by sufficiently producing evidence to create a genuine issue of material fact regarding whether each stated reason was a pretext. While she cannot disagree with the reason, she has sufficiently called into question whether each stated reason was the real reason. Ultimately, it still remains Lockwood's burden to persuade a fact finder that Coastal Health discriminated against her on the basis of race. The Court **DENIES** Defendant's Motion for Summary Judgment with respect to Lockwood's § 703 claim.

### B. Retaliation under Title VII

Lockwood also brought a retaliation claim against Coastal Health. To establish a retaliation claim under § 704, a plaintiff must show that (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action. 42 U.S.C. § 2000e-3.

An employee engages in statutorily protected activity only by opposing a "practice made unlawful" by Title VII or by making a charge, testifying, or participating in Title VII investigations or proceedings. 42 U.S.C. § 2000e-3(a).

Here, Lockwood's retaliation claim must fail because she has not shown that she engaged in statutorily protected activity. She neither opposed an unlawful employment practice nor participated in an investigation or proceeding. Her current participation in a Title VII action against Coastal Health (and the preceding charge filed with the EEOC) occurred only after she suffered adverse employment actions and thus cannot be the basis for a retaliation claim.

Therefore, Coastal Health's Motion for Summary Judgment with respect to Lockwood's retaliation claim is **GRANTED.**

### C. ADEA

The Eleventh Amendment of the U.S. Constitution bars civil suits in federal court against states. U.S. Const. amend XI. This has long been understood to prevent any federal jurisdiction over suits against nonconsenting states. College Savings Bank v. Fla. Prepaid Postsecondary Ed. Expense Bd., 527 U.S. 666, 669-670 (1999). The Supreme Court held in Kimel v. Florida Board of Regents that the ADEA did not abrogate states' Eleventh Amendment immunity from suit. 528 U.S. 62 (2000). "'Even when the Constitution vests in Congress complete

AO 72A
(Rev. 8/82)

lawmaking authority over a particular area, the Eleventh Amendment prevents congressional authorization of suits by private parties against unconsenting States.'" Id. at 78 (quoting Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 72 (1996)).

The Department of Public Health and "such divisions as may be found necessary for its effective operation" were created by legislative act. O.C.G.A. § 31-2A-2(a), (c). And DPH is "authorized, with the consent of the boards of health and the county authorities of the counties involved, to establish health districts composed of one or more counties." O.C.G.A. § 31-3-15. Coastal Health is such a sub-organization of DPH. As such, the Eleventh Amendment bars an ADEA claim against DPH and Coastal Health. Therefore, Defendant's Motion for Summary Judgment regarding Lockwood's ADEA claim is **GRANTED**.

## CONCLUSION

The Board of Health's Motion for Summary Judgment is **GRANTED** in its entirety. Dkt. No. 25. Coastal Health and Dixon's Motion for Summary Judgment, dkt. no. 23, is **GRANTED in part** and **DENIED in part**, as follows: summary judgment is **GRANTED** with respect to all claims against Dixon; it is **GRANTED** with respect to the ADEA claim against Coastal Health; it is **GRANTED** with respect to the Title VII retaliation claim against Coastal Health; and it is **DENIED** with respect to the Title VII

§ 703 claim against Coastal Health.

**SO ORDERED,** this 5th day of February, 2018.

_____
HON. LISA GODBEY WOOD
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)